# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:10CR0004-1 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **COLIN HAWKINS,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Kevin L. Jayne, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Colin Hawkins, Pro Se Defendant.*

The defendant, Colin Hawkins, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. Hawkins alleges claims of prosecutorial misconduct, court error, and ineffective assistance of counsel. This matter is before me upon the United States' Motion to Dismiss, and Hawkins has responded, making the matter ripe for disposition. After reviewing the record, I will grant the United States' Motion to Dismiss and deny the Motion to Vacate, Set Aside, or Correct Sentence.

## I.

On March 15, 2011, Hawkins was charged in a five-count Superseding Indictment involving conduct that occurred while Hawkins was an inmate at the United States Penitentiary in Lee County, Virginia ("USP Lee"). The Superseding Indictment charged Hawkins with: (1) willfully conniving and assisting in a riot

and mutiny on September 9, 2009, in violation of 18 U.S.C. § 1792 ("Count One"); (2) possessing a prohibited object that was designed and intended to be used as a weapon on September 9, 2009 (during the riot) ("Count Two") and on February 6, 2009 ("Count Four"), in violation of 18 U.S.C. §§ 1791(a)(2) and 1791(d)(1)(B); (3) forcibly resisting, impeding, and interfering with an employee of the Federal Bureau of Prisons ("BOP") by making physical contact on September 9, 2009, in violation of 18 U.S.C. § 111(a)(1) ("Count Three"); and (4) felony contempt of a court order on January 12, 2011, in violation of 18 U.S.C. § 401(3) ("Count Five").

On August 17, 2011, Hawkins pleaded guilty to Count Five. On the same day, Hawkins pleaded not guilty to Counts One through Four, and proceeded to a bench trial on those counts. I found Hawkins guilty of Counts One, Three, and Four, and not guilty of Count Two. (Order, ECF No. 170.) The evidence at trial regarding Counts One, Two, and Three was that a fight occurred in USP Lee's outdoor recreation yard on September 9, 2009, involving multiple inmates, including Hawkins, affiliated with either the D.C. Boys gang or the Bloods gang.[1] Lance Cole, the supervisor of education at USP Lee ("Officer Cole"), testified that he saw Hawkins and an unknown inmate assaulting another unknown inmate. Officer Cole attempted to restrain Hawkins, but Hawkins resisted and tried to

---

[1] Hawkins testified that he was a member of the Piru gang, which has a "good rapport" with the Bloods gang. (Trial Tr. 117-18, ECF No. 220.)

-2-

rejoin the fight. Officer Cole and correctional officer Marcus Briggs testified that, after restoring order and lifting Hawkins off the ground, they found a weapon under Hawkins's body. Hawkins and several inmate witnesses testified that Hawkins was not armed during the riot, and was not an instigator or participant of the riot, but was merely a victim defending himself.

The evidence at trial regarding Count Four was that on February 6, 2009, a physical search of Hawkins revealed a sharpened plastic homemade weapon in his shirt pocket.

A motion for a new trial was filed, which I denied. *United States v. Hawkins*, No. 2:10CR00004-001, 2012 WL 1099851 (W.D. Va. Apr. 2, 2012). On May 22, 2012, I sentenced Hawkins to 188 months imprisonment, including 120 months for Counts One and Five, to run concurrently, and eight months on Count Three and 60 months on Count Four, to run consecutively.[2] (ECF No. 240.) Hawkins appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed his convictions. *United States v. Hawkins*, 531 F. App'x 342 (4th Cir. 2013) (unpublished).

In his § 2255 motion, as amended, Hawkins alleges that the government violated his right to due process by presenting surprise testimony at trial,

---

[2] The Presentence Investigation Report ("PSR") proposed a total offense level of 31 and a criminal history category of VI, resulting in a guideline range of imprisonment of 188 to 235 months. (PSR 18, ECF No. 242.)

withholding an exculpatory document from discovery, and failing to preserve exculpatory video evidence.[3]  Further, Hawkins alleges that the court failed to put him "on notice that [his] freedom would be in jeopardy if he violated the judicial order" regarding the discovery materials.  Finally, Hawkins alleges ineffective assistance of counsel on multiple grounds.  I find that Hawkins's Motion to Vacate fails and will be dismissed.

---

[3]  Hawkins filed a Motion to Amend his Motion to Vacate that was granted by the court on July 15, 2014.  (ECF Nos. 294 and 296.)  Hawkins then filed a Motion to Supplement his Motion to Vacate, that the court granted on August 13, 2014.  (ECF Nos. 298 and 299.)  Following his Response to the government's Motion to Dismiss, Hawkins filed a Motion for Expansion of the Record, and a second Motion to Amend his Motion to Vacate.  (ECF Nos. 311 and 312.)  Hawkins's second Motion to Amend sought to amend his Motion to Vacate to include a claim that the government intentionally withheld from discovery a September 10, 2009 memorandum written by Officer Cole regarding the riot that Hawkins asserted was "exculpatory."  I granted Hawkins's second Motion to Amend and directed the United States to file a copy of the September 10, 2009 memorandum.  (ECF No. 314.)

The United States responded that it was not aware of any September 10, 2009 memorandum written by Officer Cole.  (ECF No. 315.)  Thereafter, Hawkins filed a Second Motion to Compel, conceding that the September 10, 2009 memorandum did not exist and the document at issue was actually a September 18, 2009 Duty Officer Report ("September 18, 2009 Report").  (ECF No. 321.)  Hawkins asked the court to compel the United States to produce the September 18, 2009 Report.  (*Id*.)  In response to an Order granting the Second Motion to Compel, the United States produced the September 18, 2009 Report.  (ECF Nos. 323 and 324.)

 Finally, Hawkins filed a Motion to Supplement his Response to the Motion to Dismiss (ECF No. 322-1), which I will grant to the extent that the arguments and facts alleged therein have been considered in making my ruling.

II.

A collateral attack under § 2255 may not substitute for an appeal. Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice or demonstrates actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Attorney error can serve as cause for default, but only if it amounts to a violation of the defendant's constitutional right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[4] The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Id*. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

---

[4] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. *Strickland,* 466 U.S. at 697.

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

### III.

### A. Allegations of Prosecutorial Misconduct.

Hawkins argues that the United States violated his right to due process by presenting surprise testimony from prosecution witness Officer Cole and by withholding from discovery the September 18, 2009 Report regarding the riot.[5] Hawkins states that he had no notice of Officer Cole's testimony at trial that Cole observed Hawkins and an unknown inmate assaulting another unknown inmate and that Hawkins refused to obey Cole's "orders to get on the ground." (Mem. Supp. Mot. Vacate 15, ECF No. 291-1.) Hawkins asserts that on October 30, 2013, during an administrative detention hearing, the discipline hearing officer read "two separate memorandums written by [Officer Cole]" regarding the September 9,

---

[5]  As earlier explained, initially Hawkins asserted that the United States withheld from discovery a memorandum written by Officer Cole on September 10, 2009 regarding the riot; however, Hawkins subsequently conceded his mistake and asserted that "the document . . . was not a memorandum written by Cole on September 10, 2009, but is a document titled 'Duty Officer Report' written by [] Cole on September 18, 2009." (Second Mot. Compel 1, ECF No. 321.)  Thus, this opinion reflects this modification to Hawkins's claims; specifically that the September 18, 2009 Report, and not the non-existent September 2009 Memorandum was allegedly withheld from discovery.

-6-

2009 riot, and "the memorandum written on September [18], 2009 . . . was entirely different from both [Cole's] trial testimony and his later memorandum written on September 26, 2012." (Mot. Amend 1, ECF No. 312-1; Second Mot. Compel 1, ECF No. 321.) Hawkins describes the contents of the September 18, 2009 Report as follows:

> Cole's memorandum . . . [states] that [Hawkins] had been stabbed (not punched) during the riot and did not mention any reference to [Hawkins] reportedly seen fighting nor assaulting an unknown inmate nor refusing officer's orders during the riot.

(Mot. Amend 2, ECF No. 312-1.) Hawkins argues that, had the September 18, 2009 Report been disclosed, it could have been used to impeach Cole during cross-examination, which would have resulted in a different outcome at trial. (Mot. Amend 3, ECF No. 312-1.)

The government argues that these claims are procedurally defaulted. (Mot. Dismiss 11, ECF No. 302.) Hawkins failed to raise these claims on direct appeal, and he has not demonstrated "either 'cause' and actual 'prejudice'" for his default or that he is "actually innocent." *Bousley*, 523 U.S. at 622 (internal citations omitted). Hawkins provides no explanation why he could not have raised his first claim of surprise testimony on appeal. Regarding his second claim, while Hawkins claims he was not aware of the September 18, 2009 Report until his administrative detention hearing on October 30, 2013, he has not shown prejudice because he has not shown that the government violated his rights under the due process clause.

-7-

Accordingly, I conclude that these claims are procedurally defaulted and must be dismissed. *Id.* at 621-22; *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010).

The Due Process Clause requires that a prosecutor disclose to criminal defendants favorable evidence in the government's possession that is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "To make out a *Brady* violation [Hawkins] is obliged to show that the undisclosed evidence 'creates a reasonable doubt that did not otherwise exist' as to his guilt." *United States v. Alexander*, 789 F.2d 1046, 1049-50 (4th Cir. 1986) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)); *see also United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) (noting petitioner has the burden of proving that the evidence is favorable to the accused, either because it is exculpatory or because it is impeaching, that it was suppressed by the government, and that the evidence was material to the defense). Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "Evidence is material when 'its suppression undermines confidence in the outcome of the trial'" such that, had the evidence been disclosed, the result of the proceeding

would have been different. *United States v. Kelly*, 35 F.3d 929, 936 (4th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 678, 682 (1985)).

Hawkins fails to meet his burden under *Brady*. As an initial matter, he has not contested the United States' contention that it released the September 18, 2009 Report to Hawkins's counsel on October 8, 2010. Further, Hawkins has not shown that the September 18, 2009 Report was either exculpatory or impeaching, and material to his defense. The September 18, 2009 Report describes the riot, in part, as follows:

> Staff observed two inmates fighting and responded, attempting to separate the inmates. Numerous other inmates began fighting on the basketball court as more staff were responding. Staff observed inmates hitting and kicking other inmates.

(September 18, 2009 Report 2, ECF No. 324-1.) The September 18, 2009 Report specifically mentions Hawkins twice, stating Hawkins and another inmate were "escorted to the local hospital with stab wounds" and then returned to USP Lee the following day. (*Id.*)

Thus, even assuming that the September 18, 2009 Report was suppressed by the government, the Report does not show that Hawkins was innocent of inciting or participating in the riot. Hawkins's assertion that the memorandum *lacks* mention of his fighting or assaulting an unknown inmate during the riot is not exculpatory or impeaching of Officer Cole's testimony. Moreover, both Officer Cole and Officer Marcus Brigg's trial testimony supports a finding of guilt. Cole

testified, "I saw Hawkins and another inmate assaulting an inmate. They were fighting two on one. And so I went over and attempted to restrain Hawkins, and then we ended up on the ground." (Trial Tr. 10, ECF No. 220.) He further testified, "I looked to my right and saw Hawkins and another inmate. They were on either side of an inmate, and they were punching [] that inmate." (*Id*. at 12.) Briggs testified that Cole was "forcibly pulling and tugging on [Hawkins during the riot], giving him verbal orders to get on the ground, and he was not." (*Id*. at 48.) Indeed, even Hawkins testified that he was fighting during the riot, though he couched it as defending himself, "[w]hen I was fighting them inmates, somebody grabbed my arms like this. I believe it was an inmate. . . . I can't see him. He's behind me. I'm still fighting, still over inmates trying to hit me." (*Id.* at 123.)

Hawkins also claims that the government violated his right to due process by failing to preserve video footage from cameras located nearest to where the riot occurred that Hawkins claims is exculpatory. Hawkins asserts that the footage would show that Hawkins was "attacked by multiple inmates and that the weapon was not located underneath him when lifted off the ground."[6] (Mem. Supp. Mot. Vacate 17, ECF No. 291-1.) The government indicated, in response to a motion to compel all tapes from all cameras located within the prison yard, that staff at USP Lee had reviewed all the video footage from the cameras following the riot and

---

[6] I found Hawkins not guilty of Count Two, possession of a weapon during the riot.

-10-

only footage "that had investigative value, whether incriminating or exculpatory, was preserved." (Resp. Mot. Compel, ECF No. 62.) Video footage without investigative value was recorded over approximately 14 days following the riot. (*Id.*) Thus, the footage sought by Hawkins no longer exists. However, Hawkins asserts that "bad faith occurred where the officers did not erase the video footage because of mere negligence, but because 'they decided' it held no investigative value." (Resp. Mot. Dismiss 9, ECF No. 307-1.)

This claim has already been reviewed and denied by the court of appeals. Issues raised and decided on direct appeal may not be recast "under the guise of a collateral attack." *Stitt v. United States*, 369 F. Supp. 2d 679, 685 (E.D. Va. 2005) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)). The court of appeals rejected Hawkins's argument that the government acted in bad faith when it chose to preserve "only that footage it deemed to have investigatory value" and "conclude[d] that Hawkins has not met the high bar for a failure to preserve evidence claim." *United States v. Hawkins,* 531 F. App'x at 344. Accordingly, this claim is dismissed.[7]

---

[7] Even if Hawkins's claim were proper, he has failed to meet his burden of proof. "Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *California v. Trombetta*, 467 U.S. 479, 486 (1984). However, the Supreme Court has held that due process rights are not violated when authorities did not destroy the evidence in "a calculated effort to circumvent . . . *Brady v. Maryland*," but rather, "the officers . . . were acting 'in good faith and in accord with their normal practice.'" *Id.* at 488 (quoting *Killian v. United States*, 368 U.S. 231, 242 (1961)). These

B. Allegations of Court Error.

Hawkins claims that the court failed to warn him that "his freedom would be in jeopardy" if he violated the discovery order providing that Hawkins shall not disclose materials to any person other than counsel. (Mem. Supp. Mot. Vacate 18, ECF No. 291-1; Order 1-2, ECF No. 5.) He also argues that he had no knowledge of the discovery order. The government argues that this claim should be rejected because Hawkins failed to raise it at any time prior to his § 2255 motion.

Hawkins failed to raise this claim on direct appeal. *See Hawkins,* 531 F. App'x at 344. Hawkins explains that the pretrial detention center lacked legal resources and thus prevented him from researching and raising this claim earlier. (Mot. Vacate 11, ECF No. 291; Resp. Mot. Dismiss 10, ECF No. 307-1.) However, this explanation does not demonstrate sufficient cause for his default. Hawkins was not prevented from arguing that he lacked knowledge of the order and was not present when the court entered the order. Indeed, even following his

---

principles apply in the instant case because Hawkins has not shown that the government acted in bad faith by failing to preserve the video footage, or that the government departed from its normal practice in recording over the footage 14 days following the riot. Further, Hawkins has failed to show that the footage was clearly exculpatory, when the government did preserve and produce other video footage of the riot. *See id.* at 488-89 (noting that due process is violated when the government fails to preserve evidence possessing "exculpatory value" that is apparent before it was destroyed, and when comparable evidence could not be obtained); *see also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (Defendant must establish that the government acted in bad faith to prevail on his due process claim when the exculpatory value of evidence was not apparent before it was destroyed.).

professed legal research, Hawkins presents no case law or statute to support his claim.[8] Hawkins has not demonstrated "either 'cause' and actual 'prejudice'" for his default or that he is "actually innocent." *Bousley*, 523 U.S. at 622 (internal citations omitted).[9] Accordingly, I conclude that this claim is procedurally defaulted and must be dismissed. *Id.* at 621-22; *Pettiford*, 612 F.3d at 280.

C.  Allegations of Ineffective Assistance of Counsel.

Hawkins brings numerous claims of ineffective assistance of counsel, most stemming from his frustration that counsel did not investigate and try the case

---

[8] Indeed, this claim also fails on its merits. The United States complied with the notice requirements in Federal Rule of Criminal Procedure 42, which provides, in pertinent part, as follows:

(a) Disposition After Notice.  Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.
   (1) Notice.  The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:
      (A) state the time and place of the trial;
      (B) allow the defendant a reasonable time to prepare a defense; and
      (C) state the essential facts constituting the charged criminal contempt and describe it as such.

On January 21, 2011, the court entered a Show Cause Order against both Hawkins and his counsel.  (ECF No. 70.)  This Show Cause Order was later vacated by an Order entered January 26, 2011.  (ECF No. 78.)  Thereafter, on March 15, 2011, the United States charged Hawkins with criminal contempt in a Superseding Indictment (ECF No. 93) and gave him adequate notice of the time and place of trial.  (ECF Nos. 102, 111, 139.)  Of course, Hawkins ultimately elected to plead guilty to this charge.

[9] The record also establishes that Hawkins entered a knowing and voluntary guilty plea, and he confirmed that he was pleading guilty because he was "in fact, guilty of [the] charge."  (Guilty Plea Hr'g Tr. 9, ECF No. 262.)

-13-

exactly as Hawkins wanted. However, none of his claims show both the deficient performance and resulting prejudice required by *Strickland*. Hawkins claims that counsel provided ineffective assistance by failing to: (1) prepare adequately for trial; (2) file certain pretrial motions; (3) present certain witnesses at trial; (4) present evidence of his actual innocence; (5) conduct adequate pre-trial investigation; (6) "subject the prosecution's case to adverse testing"; (7) effectively impeach certain government witnesses; (8) provide accurate legal advice; and (9) argue that § 2J1.2 sentencing guideline was improperly applied to Count Five.

1. Trial Preparation.

Hawkins claims that counsel failed to prepare adequately for trial, complaining that counsel did not spend enough time meeting with him to adequately review discovery material or prepare trial strategy. (Memo. Supp. Mot. Vacate 2, ECF No. 291-1; Supplement Mot. Vacate 1-3, ECF No. 298-1.) The record shows that Hawkins voiced complaints about counsel and had disagreements with counsel regarding trial strategy, prior to his trial.[10] However, Hawkins has not shown that his counsel's trial preparation was inadequate.

---

[10] Hawkins had three different court appointed attorneys during the pendency of his case. Following Indictment the court appointed Charles Bledsoe to represent Hawkins. Thereafter, the court granted Hawkins's Motion to have Bledsoe Withdraw as Counsel and, on January 28, 2011, the court substituted John T. Harris, III. (Order for Substitution of Counsel, ECF No. 87.) On May 10, 2011, and July 29, 2011, Hawkins moved pro se to have Harris removed as counsel, citing "irreconcilable differences." (ECF Nos. 131, 148.) On August 1, 2011, Harris filed a Motion to be Allowed to Withdraw, citing, in part, a "hostile working relationship" and Hawkins's insistence that

Hawkins asserts that, as of May 17, 2011, counsel had only visited him twice, amounting to a total time of "less than 30 minutes."[11] (Mem. Supp. Mot. Vacate 2, ECF No. 291-1.) Hawkins argues that, if counsel had prepared adequately, he would have discovered the identity of "possible defense witnesses." (*Id.*) Hawkins also argues that proper preparation would have uncovered the fact that Officer Cole made no statements prior to trial that supported trial testimony that he observed Hawkins participating in the riot. However, Hawkins does not identify the "possible defense witnesses" or specify how their testimony would have changed the outcome of his trial. Conclusory allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992); *see also Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland's* standards' because 'it is very difficult to assess whether

---

counsel file "what counsel deems to be frivolous motions." (ECF No. 150.) The court denied the motions to withdraw. (August 5, 2011, Oral Order, ECF Nos. 161, 162.) Following his trial, Hawkins filed another Motion to Withdraw Counsel, which the court granted on October 7, 2011, and substituted Karen Bishop as counsel. (ECF Nos. 174, 180, 180.) Finally, the court of appeals permitted Hawkins to proceed pro se on his appeal.

[11] The court notes that trial in this case did not occur until August 17, 2011, and Hawkins does not indicate how much time he spent meeting with defense counsel between May 17, 2011, and the trial date.

counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'") (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)); *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (dismissing claims where petitioner failed to make a specific proffer of the testimony of the omitted witness). Moreover, counsel presented defense witnesses Terrell Forth and David Norman, who both testified that Hawkins was attacked during the riot. (Trial Tr. 77, 85, 89, 90, ECF No. 220.) Finally, Hawkins has not shown that evidence that Officer Cole made no pre-trial statements regarding Hawkins's attacking another inmate during the riot would have changed the trial outcome. Accordingly, this claim will be denied.

2. Pretrial Motions.

Hawkins claims that counsel provided ineffective assistance by failing to move to suppress a weapon found on Hawkins's person on February 6, 2009, as well as by failing to file a motion challenging the "government's selective prosecution."[12] (Mem. Supp. Mot. Vacate 3, ECF No. 291-1.)

Regarding the motion to suppress, Hawkins has failed to overcome the "presumption that, under the circumstances, the challenged action 'might be

---

[12] Hawkins states that the alleged weapon found on February 6, 2009, was a "homemade pen holder made of [two] pieces of cut cardboard with a rubber band wrapped around them . . . which held [two] pens and a colored pencil." (Ex. 4 to Mot. Vacate 16, ECF No. 291-2.)

-16-

considered sound trial strategy.'"[13] *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Counsel is not required to obtain the defendant's consent to "every tactical decision." *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (finding counsel must allow defendant to make only certain decisions, including whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal). Finally, Hawkins has not shown that a motion to suppress would have been successful, and the Sixth Amendment does not require counsel to raise a meritless argument. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010).[14]

Hawkins has also not shown a cognizable basis for filing a selective prosecution claim. To succeed on a selective-prosecution claim, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v.*

---

[13] As support for his claim, Hawkins references an August 5, 2011 hearing where he states he asked counsel to subpoena the weapon in Count Four. However, as noted by counsel at the hearing, the weapon found on February 6, 2009 did not exist at the time of Hawkins's trial. Counsel states, "[t]here is no weapon that can be produced by the government on [Count Four]. . . . This involves an allegation of possession of a weapon before this prison incident. And all they have is a picture of the weapon; they do not have the actual weapon." (Ex. 5 to Mot. Vacate, ECF No. 291-2.) Moreover, regarding the photograph of the weapon found on the day of the riot, Hawkins was found not guilty of Count Two.

[14] Hawkins claim that counsel provided ineffective assistance by failing to move to suppress a photograph of the weapon found during the riot fails for the same reasons. Further, Hawkins cannot show prejudice because Hawkins was found not guilty of Count Two, possessing a weapon during the riot.

Case 2:10-cr-00004-JPJ   Document 326   Filed 11/19/15   Page 17 of 32   Pageid#: 1670

*Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926) ("[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties.")  Hawkins' bare allegation that "similarly situated individuals were not prosecuted" and that no correctional officer documented having "observed [Hawkins] fighting" is not sufficient to plausibly suggest that counsel's decision not to pursue a selective-prosecution claim was objectively unreasonable.  (Mem. Supp. Mot. Vacate 3, ECF No. 291-1; Resp. Mot. Dismiss 2, ECF No. 307-1.)

Because Hawkins has not established that the motion to suppress, or a motion challenging "selective prosecution" would have been successful, Hawkins has failed to plausibly allege deficient performance.  *See Strickland*, 466 U.S. at 687-91.  Accordingly, the court will dismiss these claims.

    3.  Defense Trial Witnesses.

Hawkins claims that counsel provided ineffective assistance by failing to present certain witnesses at trial, and failing to adequately interview and prepare defense witnesses for trial.  In support, Hawkins claims that the "missing testimony would have significantly altered [the] evidentiary posture of case."  (Mem. Supp. Mot. Vacate 4, ECF No. 291-1.)  However, Hawkins does not identify the missing

-18-

defense witnesses or proffer their trial testimony.[15]  Likewise, Hawkins does not

establish that counsel's alleged failure to properly prepare witnesses resulted in any

prejudice.   Hawkins has merely alleged that one of the witnesses called was not

present at the riot and another had no recollection of the riot.  Hawkins has not

established that their testimony harmed his case in any way.

"[T]he decision whether to call a defense witness is a strategic decision,

demanding the assessment and balancing of perceived benefits against perceived

risks," and a habeas court must give great deference to such decisions.  *United

States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (internal quotation marks and

citation omitted) (rejecting claim that counsel was ineffective in failing to call

three jail house witnesses who might have provided exculpatory evidence); *see

also Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977) (the failure to

call witnesses is a tactical decision which courts are reluctant to second guess).

Hawkins has failed to show that counsel provided ineffective assistance under

*Strickland.*  Accordingly, the court will dismiss these claims.

---

[15] Hawkins asserts in his Response to the Motion to Dismiss that these witnesses
were identified in an ex parte hearing.  However, Hawkins does not provide their names,
nor does he indicate their expected testimony and how it would have helped his case.
(Resp. Mot. Dismiss 2, ECF No. 307-1.)

4.  Actual Innocence.

Hawkins also asserts he has "newly reliable evidence that he is factually innocent of the offenses for which he was convicted."[16]  (Mem. Supp. Mot. Vacate 13, ECF No. 291-1.)   Hawkins has provided four affidavits from "both eyewitnesses and participants of the riot" as well as medical records.[17]  (*Id*. at 14.) Hawkins argues that the affidavits and medical records support his contention that other inmates attacked him during the riot.

Hawkins's claim has no merit.  The affidavits submitted are, at best, merely cumulative, and reflect the same version of events that Hawkins presented at trial, namely that he was a victim of assault and not an instigator or participant in the riot.  The medical records show only that Hawkins was injured during the riot and

---

[16]   It appears that Hawkins is attempting to make a freestanding claim of actual innocence.  Whether a freestanding claim of actual innocence is cognizable in a habeas action unaccompanied by an assertion of an independent constitutional violation remains unsettled in the Fourth Circuit.  *See Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999). In light of this, and because Hawkins is acting pro se, the court will liberally construe his pleadings to assert a companion claim that counsel provided ineffective assistance by not procuring these witnesses for trial.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, I find that Hawkins has not shown he was actually innocent of his convictions.

[17]   Hawkins provides the following affidavits:  (1) Donnell Riddick avers that he witnessed Hawkins being attacked by a group of inmates during the riot (Ex. 21 to Mot. Vacate 2, ECF No. 291-6); (2) John Tyler avers that he observed Hawkins "being jumped by [two] other inmates" during the riot (Ex. 21 to Mot. Vacate 3, ECF No. 291-6); (3) Carlos Velez avers that he "noticed [three] unknown inmates attacking [Hawkins] during the riot (Ex. 21 to Mot. Vacate 4, ECF No. 291-6); (4) Antonio Johnson avers that he observed Hawkins being attacked by two unknown inmates, and that Johnson himself joined in the attack.  (Ex. 22 to Mot. Vacate 8, ECF No. 291-6.)

-20-

do not disprove that he was an instigator.  Indeed, the evidence at trial included

testimony that Hawkins was injured during the riot.  (Trial Tr. 17, 36, ECF No.

220.)  Accordingly, this claim will be dismissed.[18]

    5.  Pretrial Investigation.

    Hawkins claims that counsel provided ineffective assistance by failing to use

Hawkins's September 2009 psychological records to show that Hawkins was "in a

state of panic during the riot," as well as failing to discover that Officer Cole's

testimony was not corroborated by any documentation.  (Mem. Supp. Mot. Vacate

---

[18] The United States argues that this claim should be rejected because Hawkins failed to raise it on direct appeal.  Hawkins argues that he could not have presented this evidence earlier because he was transferred to a prison in another state, the affiants were housed in different prisons, and he acquired the affidavits on "separate dates, while the direct appeal was pending."  (Mem. Supp. Mot. Vacate 14, ECF No. 291-1.)

    However, the riot took place on September 9, 2009, and Hawkins's direct appeal did not end until August 2013.  Hawkins provides no clear explanation why he could not have provided the affidavits at some point during this time frame.  Indeed, Hawkins was able to provide other affidavits from inmates to both the district court and the court of appeals.  On December 29, 2011, Hawkins filed "Affidavits in Support of a Motion For New Trial" including affidavits from four inmates purportedly showing that [Hawkins] was not a participant in said [r]iot but [more] a victim of an assault.  (Mot. New Trial 1, ECF No. 201.)  Further, the court of appeals rejected Hawkins's argument that he "discovered a dozen new witnesses willing to testify to his version of events."  *Hawkins*, 531 F. App'x at 346.

    Finally, Hawkins provides no explanation regarding why he could not have provided the medical records earlier.  Hawkins has not demonstrated "either 'cause' and actual 'prejudice'" for his default, and, as discussed above, he has not shown that he is "actually innocent."  *Bousley*, 523 U.S. at 622 (internal citations omitted).  Accordingly, I also conclude that this claim is procedurally defaulted and must be dismissed.  *Id.* at 621-22; *Pettiford*, 612 F.3d at 280.

6, ECF No. 291-1.) Hawkins asserts that all documentation related to the riot described Hawkins as "being assaulted during the riot and one of the only [two] inmate victims." (*Id*.)

The September 2009 psychological record diagnoses Hawkins with a mild panic disorder. However, it is not apparent how this record would have helped Hawkins. Hawkins testified at trial that he did not hear Officer Cole giving him any orders because of his headphones and did not see Officer Cole because he was "fighting the whole time." (Trial Tr. 122, ECF No. 220.) Hawkins's testimony at trial was that he was focused on defending himself from attack by other inmates, "I've got common sense. You can't stand in one spot. You moving, trying to fight . . . ." (*Id*.) His testimony was not that he was hampered by a panic disorder.

Defense counsel cross-examined Officer Cole effectively, including questioning him about the incident report he prepared on September 15, 2009, regarding being struck by a lock during the riot. (Trial Tr. 34, ECF No. 220.) Hawkins has not shown that Cole's testimony that Hawkins attacked another inmate was "surprise testimony" that counsel could have impeached had he prepared for trial properly.[19] Furthermore, while Hawkins asserts in his amended §

---

[19] Furthermore, Hawkins has not shown that counsel provided ineffective assistance for his failure to object to "surprise testimony" from Officer Cole that he witnessed Hawkins assaulting an unknown inmate. (Mem. Supp. Mot. Vacate 10, ECF No. 291-1.) Hawkins has provided no cognizable basis for an objection.

-22-

2255 motion that the United States unlawfully suppressed the September 18, 2009 Report, Hawkins has not shown that counsel should have reasonably discovered this alleged report. From counsel's perspective at the time of trial, he had obtained the relevant incident reports, including the report written by Cole on September 15, 2009.[20] (ECF No. 213.) A "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) ("[T]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error . . . .")

The defense attorney put up an adequate defense with three inmate defense witnesses, including Hawkins, and multiple correctional officers and jail employees.[21] Hawkins's allegations that counsel did not comply with his every

---

[20] Indeed, even assuming counsel had the September 18, 2009 Report at the time of trial, the Report contains nothing exculpatory or that could clearly have been used to impeach Officer Cole's testimony. Thus, to the extent that Hawkins might claim his counsel provided ineffective assistance for failing to use this Report in cross-examination, this claim would fail.

[21] Defense witness inmate Terrell Forth testified that Hawkins was attacked and that there was no knife under him when the officers lifted him off the ground. (Trial Tr. 77, 85, ECF No. 220.) Defense witness inmate David Norman also testified that Hawkins was attacked during the riot and that he never saw Hawkins possess a weapon. (*Id.* at 89-90.)

demand or follow every possible lead does not create a cognizable claim under *Strickland* because Hawkins has not overcome the strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) ("It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks.") Accordingly, these claims will be dismissed.

6. Adverse Testing.

Hawkins's claims that counsel provided ineffective assistance by failing to "subject the prosecution's case to adverse testing" also fail. Hawkins alleges counsel failed to (1) present medical records and testimony from his doctor related to his treatment on the day of the riot to show he sustained injuries; (2) question Hawkins properly during direct examination regarding the incident alleged in Count Four; and (3) introduce the headphones as evidence to show he could not hear Cole's orders to "lay on the ground." (Mem. Supp. Mot. Vacate 7-8, ECF No. 291-1.)

Hawkins's medical records are not exculpatory, and there was no dispute at trial regarding the extent of his injuries. Counsel questioned Officer Cole regarding Hawkins's injuries, and Officer Cole confirmed that he had observed the

-24-

cut over Hawkins's eye. (Trial Tr. 36, ECF No. 220.) Counsel also introduced into evidence a photo of Hawkins following the riot, showing Hawkins's injuries. (*Id*. at 37.) Further, Hawkins does not specify what questions counsel should have asked him regarding Count Four or how those questions would have changed the outcome of his case. Finally, defense witness Officer Derek Artrip testified that Hawkins had head phones and a radio in his possession following the riot.[22] (*Id*. at 97.) Hawkins has not overcome the strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Accordingly, these claims will be dismissed.

    7. Impeachment of Government Witnesses.

    Hawkins claims that counsel provided ineffective assistance by failing to effectively impeach government witnesses Officers Cole and Briggs about their allegedly false testimony and inconsistent statements. (Mem. Supp. Mot. Vacate 9, ECF No. 291-1.) Hawkins asserts that Officer Cole testified inmate Norman struck Cole with a lock attached to a belt during the riot but that Cole's physician indicated in her report that the laceration was caused by a knife. Hawkins further asserts that Cole's testimony that he witnessed Hawkins and an unknown inmate attacking another unknown inmate was not corroborated by any documentation,

---

    [22] Hawkins also testified at trial that he was wearing headphones and that, "just out of nowhere somebody hit [him]." (*Id.* at 120.)

which is "required policy for staff . . . who witness such prohibited acts." (*Id*. at 8.) Hawkins also claims that Officer Briggs's testimony regarding the knife found in Hawkins's possession during the riot was contradicted by Cole's testimony.

However, Hawkins has failed to show ineffective assistance under *Strickland*. Counsel questioned Officer Cole about Cole's confusion over whether he was struck by a lock or a knife. (Trial Tr. 9, ECF No. 220.) Further, after Brigg's testimony that a homemade knife was found under Hawkins after the riot, counsel questioned Briggs about the location of Hawkins's hands, eliciting testimony from Briggs that Hawkins's hands were "under his stomach." [23] (*Id*. at 61.) Counsel also questioned FBI Agent Doug Fender regarding his conflicting testimony before the grand jury on the location of the weapon. (*Id*. at 102.) Indeed, the court ultimately found Hawkins not guilty of possessing a weapon during the riot; which further supports the presumption that counsel provided reasonable professional assistance. *Strickland* 466 U.S. at 689; *see also Yarbrough v. Johnson*, 490 F.Supp. 2d 694, 738-39 (E.D. Va. 2007) ("A hindsight review of any cross-examination will unquestionably reveal an opportunity to ask one more question or highlight one more point; however, in the midst of a trial with an adverse witness on the stand, a lawyer must always make split-second decisions as

---

[23] Officer Cole testified at trial only that Hawkins's hands were "down here initially" prior to being restrained. Contrary to Hawkins's assertions, this statement is not clearly inconsistent with Officer Briggs's testimony. (Trial Tr. 24, ECF No. 220.)

to how to best shape his questioning in order to extract the most desirable responses.")  Accordingly, these claims will be dismissed.

8.  Advice of Counsel.

Hawkins alleges that counsel provided ineffective assistance by providing inaccurate advice about (1) whether the photograph of the weapon alleged in Count Four would be admissible; (2) consecutive sentences; and (3) the decision to plead guilty to Count Five, and proceed to a bench trial on the remaining Counts.  In support, Hawkins claims that counsel advised him that the government was required to produce the actual weapon, not just a photograph of the weapon.  (Mot. Amend 1, ECF 294-1.)  Hawkins also claims that counsel advised him that "the trial judge does not impose consecutive sentences."  (*Id*. at 2-3.)  Regarding his guilty plea, Hawkins claims that his plea was not knowing and voluntary because counsel advised him that he would "likely receive a monetary fine and probation . . . if he plead[ed] guilty . . . ."  (Mem. Supp. Mot. Vacate 11, ECF No. 291-1.)  Finally, Hawkins alleges that when he told counsel he wanted to plead guilty, counsel encouraged him to proceed to trial by assuring him "that the government lacked jurisdiction to prosecute him due to USP-Lee County not being on federal property."  (*Id*. at 10-12.)

Hawkins has not shown ineffective assistance related to counsel's advice regarding the admissibility of the photograph, consecutive sentences, or the

government's lack of jurisdiction. Counsel indicated to Hawkins that he would object at trial to the admissibility of the photograph of the weapon alleged in Count Four, which counsel did, and was overruled. (Trial Tr. 57, ECF No. 220.) Hawkins's insistence that counsel should have filed a motion to suppress the photograph does not show prejudice because, as discussed previously, Hawkins has not established that a motion to suppress would have been successful. Further, regarding consecutive sentences, Hawkins admits that he was advised as to the maximum possible sentence at his arraignment. (Mot. Amend 2, ECF No. 294-1; Arraignment Hr'g Tr. 6, ECF No. 273.)

In making his jurisdictional argument, counsel stated, "[t]he government was required . . . to prove that USP Lee is within the special maritime and territorial jurisdiction of the United States. And they have put on no evidence, whatsoever, to support that fact." (Trial Tr. 9, ECF No. 297.) Counsel contended that the government would have had to show that the "land the prison sits on actually is the property of the United States" by producing deeds showing that "the board of supervisors of Lee County met and that they own this property, and that they conveyed it to the United States [] by a deed recorded in the Lee County, Virginia Circuit Court." (*Id*. at 9-10.) Counsel's jurisdictional argument did not meet with success. However, Hawkins has not shown that counsel's interpretation of the law, and resulting advice to his client and argument to the court constituted

-28-

ineffective assistance. *See Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977) (noting an ineffective assistance of counsel claim requires a petitioner to "establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation").

Hawkins also cannot demonstrate the necessary prejudice to prevail on his claim that he received inaccurate advice regarding his likely sentence if he pleaded guilty to Count Five. As applied to a guilty plea, the first prong of *Strickland* remains the same. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). However, the prejudice prong requires a petitioner to demonstrate "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

"[A]ny misinformation [Hawkins] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [Hawkins] was not prejudiced." *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995). At the Rule 11 hearing, and prior to his guilty plea, Hawkins was instructed that the maximum penalty was unlimited and the court had "discretion to impose any sentence." (Tr. Guilty Plea Hr'g 6, ECF No. 262.) Significantly, Hawkins stated under oath that there were no promises made by any party that caused him to want to plead guilty. (*Id*. at 7.) Further, during the plea colloquy, Hawkins affirmed that he had an

adequate opportunity to discuss Count Five with counsel and was satisfied with counsel's representation. (*Id.* at 4.) Finally, Hawkins affirmed that he was pleading guilty because he was, "in fact, guilty of [the] charge." (*Id.* at 9.) Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted). Further, counsel's alleged mistaken sentence estimate does not support an ineffective assistance of counsel claim. *See United States v. Lambey*, 974 F.2d 1389, 1393-96 (4th Cir. 1992); *see also Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) ("An attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea."). Accordingly, these claims will be dismissed.

9. Application of United States Sentencing Guidelines § 2J1.2.

Hawkins argues that counsel should have objected to the PSR and argued that United States Sentencing Guidelines § 2J1.2 ("Obstruction of Justice") did not apply to his case. The PSR recommended that the applicable guideline for Count Five was § 2J1.2, resulting in a base offense level of 14.[24] However, Hawkins fails

---

[24] The PSR stated, "[t]he applicable guideline for [Count Five] is U.S.S.G. § 2J1.1, which directs you to § 2X5.1. This guideline directs the use of the most analogous guideline; therefore U.S.S.G. § 2J1.2 was used for computation purposes."

Case 2:10-cr-00004-JPJ  Document 326  Filed 11/19/15  Page 30 of 32  Pageid#: 1683

to provide any cognizable reason why § 2J1.2 does not apply to his case, merely stating that "§ 2B1.1(b)(9)(c) (pertaining to a violation of a prior, specific judicial order) ordinarily would apply." (Mem. Supp. Mot. Vacate 13, ECF No. 291-1.)

Counsel did not provide ineffective assistance because § 2J1.2 does apply to the conduct alleged in Count Five. The Background Notes for § 2J1.2 indicate that numerous offenses may constitute obstruction of justice, including obstructing a criminal investigation, altering evidence, and stealing or altering court records, and "the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed." During Hawkins's guilty plea hearing, the evidence presented was that, after receiving his discovery materials from jail officials in error, Hawkins attempted to "delay or cause an issue with" his trial by throwing some of the discovery materials away and hiding the remainder in the jail cell of another inmate.[25] (Guilty Plea Hr'g Tr. 5, ECF No. 262.) Hawkins averred at the guilty plea hearing that he did not dispute any of the facts presented. (*Id*. at 6.) Accordingly, Hawkins fails to show deficient performance under *Strickland*, and this claim will be dismissed.

---

[25] The court order directed that the discovery was to be placed at the jail for Hawkins's review, but should not be in Hawkins's possession.

IV.

For the foregoing reasons, I grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence. A separate Final Order will be entered herewith.

DATED: November 19, 2015

/s/ James P. Jones
United States District Judge